IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| LINELL CARR, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § CIVIL ACTION NO. G-06-629 |
| | § |
| ENSCO OFFSHORE COMPANY and | § |
| ENSCO MARINE COMPANY, | § |
| | § RULE 9(h) ADMIRALTY |
| Defendants. | § |

## ORDER DENYING DEFENDANTS' MOTION TO TRANSFER VENUE

Plaintiff Linell Carr ("Carr") brings this action against Defendants Ensco Offshore Company ("Ensco") and Ensco Marine Company ("Ensco Marine") (collectively "Defendants") for personal injuries Carr allegedly suffered when he was working on a vessel and drilling rig owned by Ensco. Defendants filed a Motion to Transfer Venue to the Hattiesburg Division of the Southern District of Mississippi. Carr filed a timely Response, to which Defendants filed a Reply. Carr then filed a Supplemental Response. For the reasons stated below, Defendants' Motion is respectfully **DENIED**.[1]

**I. Background**

Carr claims he is a seaman who was employed by Ensco and worked aboard their vessel, the ENSCO 89. Carr claims that in July 2005, he was working aboard the ENSCO 89 when it was being renovated in Brownsville, Texas. According to Carr, the tongs were being refurbished as part of the renovation, but they were defective. Carr claims that Ensco knew the tongs were defective, but sent

---

[1]The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

the vessel out to sea, anyway.

In April, 2006, Carr was performing his regular duties aboard the ENSCO 89, which was now in the Gulf of Mexico, off the coast of Louisiana. Carr's duties included opening and manipulating the vessel's allegedly defective tongs. According to Carr, he experienced pain in his lower back during the first week of the April hitch, and the pain continued to worsen and spread to his right leg. Carr continued to work with the tongs, despite the pain, and, allegedly, he eventually sustained severe injuries to his lower back, right leg, and other parts of his body.

Carr is a resident of the Southern District of Mississippi. Ensco is a Delaware Corporation, and its main operations office is in Broussard, Louisiana. Defendants claim that Ensco Marine no longer does business and has no connection to this case.

**II. Legal Standard**

The federal venue transfer statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2000). The movant bears the burden of demonstrating to the Court that it should transfer the case. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (requiring the movant to make a showing that the forum sought is more convenient); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) ("At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed."). In determining whether a venue transfer is warranted, the Court considers the availability and convenience of witnesses and parties; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the location of pertinent books and records; the possibility of delay and prejudice if transfer is granted; and the plaintiff's choice of

forum, which is generally entitled to great deference. *See, e.g.*, *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993); *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F. Supp. 1392, 1395–96 (S.D. Tex. 1992). The decision to transfer a case lies within the sound discretion of the Court, and such determinations are reviewed under an abuse of discretion standard. *See Peteet*, 868 F.2d at 1436.

**III. Analysis**

*A. Availability and Convenience of Witnesses and Parties*

"The availability and convenience of witnesses is arguably the most important of the factors" in the § 1404 analysis. *LeBouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998) (citing 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3851, at 415 (1986)). To support a motion to transfer on this ground, the movant must identify key witnesses and provide a brief outline of their likely testimony. *See id.* (citing *Dupre*, 810 F. Supp. at 825). "The convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Id.*

Defendants claim that the witnesses who should be given the greatest amount of consideration are Plaintiff's original treating physicians. Both physicians cited live in Mississippi. While a trial in Mississippi would admittedly be more convenient should these physicians be called upon to testify at trial, their presence at trial is unlikely. Virtually all medical doctors testify by deposition in order to defray expense and the amount of time they must spend away from their patients. Absent unique circumstances, the convenience of the trial location to the original treating physicians is inconsequential. The Court has been presented with no arguments indicating that this is an exceptional case in which live testimony from the original treating physicians is necessary.

Thus, any weight given to the convenience of these witnesses is slight.

Defendants next identify several members of the ENSCO 89 crew, all of whom are still employed by Ensco. Ensco admits that it has some control over the attendance of these witnesses, but urges the Court to consider their convenience, as they "likely have families and personal lives outside this case." (Defs.' Mot. 4.) Generally, the Court gives very little consideration to the convenience of witnesses who are still employed by Defendant. *See Continental Airlines*, 805 F. Supp. at 1397 (The convenience of employees of Defendants "is entitled to less weight because [Defendants] will be able to compel their testimony at trial."); *see also Walter Oil & Gas Corp. v. Teekay Shipping*, 270 F. Supp. 2d 855, 861 (S.D. Tex. 2003) ("[T]he Court finds that these witnesses' convenience is entitled to little consideration because they are [the defendant's] employees."); *Speed v. Omega Protein, Inc.*, 246 F. Supp. 2d 668, 674 (S.D. Tex. 2003) ("The Court would normally discount the inconvenience of Defendant's employees who witnessed the accident since their testimony can be compelled."); *Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720, 731 (S.D. Tex. 2002) ("[T]hese witnesses are entitled to less deference since most are [the defendant's] employees."). And, even if the Court were to give the convenience of these employees more consideration than normal, as is urged by Defendants, such consideration would not tip in favor of Defendants. Defendants cite five crewmembers who likely have knowledge regarding the alleged incident. Four of these crewmembers live in Louisiana, and one lives in Mississippi. Plaintiff points out that the four crewmembers who live in Louisiana actually live closer to Galveston than to Hattiesburg. Plaintiff also asserts that two Ensco employees that are likely to testify at trial because they worked with Plaintiff, have knowledge regarding his injuries, and have knowledge about the

4

condition and maintenance of the allegedly defective tongs, are Texas residents.[2] It is highly unlikely that all seven of these employees will be called upon to testify at trial because "this Court vigorously exercises its authority under Fed. R. Evid. 403 and 611(a) to ensure that each witness' testimony is as concise as possible and that cumulative and redundant testimony is kept to a minimum." *Continental Airlines*, 805 F. Supp. at 1397. However, it is impossible to determine, at this point, which of the seven presented witnesses will be called upon to testify. It is clear, though, that Hattiesburg would be more convenient for only one of the seven cited crewmembers, and, in the event that this one crewmember's testimony is essential, Ensco can compel his attendance at trial. Thus, the convenience of the crewmembers does not weigh in favor of transfer.[3]

Plaintiff has retained three experts who reside in this District. While the testimony of these experts, either live or by deposition, will undoubtedly be necessary at trial, Plaintiff can compel these experts to attend trial. Thus, the Court does not give very much consideration to their convenience.

The final witness discussed by the Parties, excluding the Parties themselves, is Gary Moss, an employee of Chevron. Moss was the operator of the ENSCO 89 at the time of the incident, and Plaintiff claims that Moss's testimony is key because he allegedly warned ENSCO employees that

---

[2]Defendants claim that the two Texas employees referred to by Plaintiff are "anonymous, peripheral individuals." (Defs.' Reply 4.) However, the Court has been presented with no depositions or affidavits regarding the alleged knowledge of *any* of the crewmembers, and it must rely on the brief outline of expected testimony that is presented.

[3]Plaintiff also notes that four Ensco employees who are not crewmembers *may become* key witnesses. Plaintiff indicates that Texas is more convenient for these employees, but only identifies the residence of one of the four. Plaintiff does not provide a brief outline of the likely testimony of these four witnesses. Thus, their convenience is not considered in this analysis.
Defendants indicate that the testimony of three different Ensco employees who are not crewmembers "may be necessary" at trial. (Defs.' Mot. 5.) If the testimony merely *may* be necessary, then it is certainly not the type of key testimony that bears weight in a transfer of venue analysis.

the tongs were defective and needed to be fixed. Plaintiff asserts that, since Moss is employed by Chevron, he is *likely* a resident of this District. (Pl.'s Resp. 4.) Though each Party has filed documents related to the Motion to Transfer Venue since the Plaintiff discussed Moss's likely testimony and residence, the Court has not been enlightened as to Moss's residence. The Court cannot assume Moss lives in Texas simply because he is employed by Chevron, which has offices all over the world. Moss's convenience necessarily depends on where he resides, or, at least, where he works. Thus, while Plaintiff has convinced the Court that Moss's testimony is key, the Court is unable to consider his convenience.

The convenience of the Parties also merits consideration. *See Puerto v. Marine Transp. Lines, Inc.*, 976 F. Supp. 1072, 1074 (S.D. Tex. 1997) ("When determining the relative conveniences of transfer, the Court also considers the residences of the parties in the action."). Plaintiff resides in Mississippi, but it is presumed, since he chose this forum, that he does not consider it inconvenient. Ensco's key office is in Broussard, Louisiana. Ensco claims that Hattiesburg is more convenient for it than Galveston because Broussard is "somewhat" closer to Hattiesburg. (Defs.' Mot. 7.) Plaintiff notes that Broussard is 1.03 miles further from Galveston than it is from Hattiesburg. This minute difference in distance is negligible. If Ensco's key office were in Mississippi or if Defendants could show that Ensco's offices were significantly closer to Hattiesburg than Galveston, then their convenience would weigh into the Court's analysis. However, Defendants have not made such a showing in the instant case and, as such, have not met their burden.

In sum, both Parties have presented the Court with numerous possible key witnesses, and neither Galveston nor Hattiesburg will be convenient for them all. The Court does not transfer a case for some witnesses when such a transfer would, in turn, inconvenience other witnesses of equivalent

importance. Thus, this factor weighs neither for nor against transfer.

B. *Cost of Obtaining the Attendance of Witnesses and Other Trial Expenses*

Parties to litigation face unavoidable costs in almost every case that goes to trial. *Robertson v. M/V Cape Hunter*, 979 F. Supp. 1105, 1108 (S.D. Tex. 1997). Furthermore, it is "rare that the forum in which the case is litigated is the most convenient for all the parties involved." *Id.* Defendants claim that the majority of key witnesses reside more than 100 miles from Galveston and, as such, conducting the trial in Galveston will be significantly more expensive for both Parties. As discussed above, most of these witnesses also live more than 100 miles from Hattiesburg. Furthermore, any witnesses from Brownsville, which is where the allegedly defective tongs were refurbished prior to Plaintiff's injuries, will likely incur significantly more expense traveling to Hattiesburg than they would driving to Galveston. The locations of witnesses span the Southern states from Texas to Mississippi, and there is not one single location that would significantly reduce litigation-related expenses. As such, this factor does not favor transfer.

C. *Location of Books and Records*

The location of books and records is generally of little importance in personal injury cases. Here, Defendants claim that all of Plaintiff's medical records are located in Mississippi and virtually all of Plaintiff's employment records are in Broussard, Louisiana. However, Defendants have not given the Court any indication that the records located in Mississippi and Louisiana are so voluminous as to cause Defendants to incur substantial cost in transporting them to this Court. *See LeBouef*, 20 F. Supp. 2d at 1060 ("The Court finds little inconvenience inherent in bringing, if necessary, those records to Galveston [from Louisiana]."). Thus, this factor weighs neither for nor against transfer.

D. *Plaintiff's Choice of Forum*

Plaintiff's decision to litigate this case in Texas is generally entitled to great deference. *See Barnett v. Kirby Inland Marine, Inc.*, 202 F. Supp. 2d 664, 670 (S.D. Tex. 2002). Plaintiff's choice of forum is entitled to less deference if Plaintiff does not reside in the forum. *See, e.g.*, *Robertson* 979 F. Supp. at 1109 (finding that a Mississippi plaintiff's choice of the Southern District of Texas was entitled to little or no deference where the case had no connection to the forum). The amount of deference given to a non-resident plaintiff is further reduced if the case has no connection to this forum. *See Robertson*, 979 F. Supp. at 1109.

Defendants claim that this factor should be given no weight because (1) Plaintiff does not reside in this forum; and (2) this case has absolutely no connection to this forum. The Court agrees that the deference to Plaintiff's choice of forum is reduced because Plaintiff does not reside in this District. However, the Court finds that Plaintiff's choice should still be accorded some deference because the case has a connection to this forum. The ENSCO 89 traveled from Brownsville to Louisiana with allegedly defective tongs. The vessel must have at some point traversed the waters south of Galveston, and it is alleged that it did so with defective equipment. Thus, the case bears at least *some* connection to this forum. Accordingly, the Plaintiff's election of this forum is entitled to deference, but the deference in slight.

E. *Place of the Alleged Wrong*

The place of the alleged wrong is an important factor in venue determinations. *See Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720, 732 (S.D. Tex. 2002). Here, the tongs were allegedly

8

renovated and sustained damage in Brownsville, Texas.[4]  Plaintiff was allegedly injured when the vessel was off the coast of Louisiana.  Neither alleged wrong occurred in Mississippi, and Brownsville is significantly closer to Galveston than Hattiesburg.  Thus, this factor does not support transfer.

*E.  Potential for Delay*

Any transfer will produce some delay, and Plaintiff must show that a transfer at this stage would cause a significant or unusual delay in order for this factor to be relevant.  *See In Re: Horseshoe Entertainment*, 337 F.3d 429 (5th Cir. 2002) ("[I]n rare and special circumstances a factor of delay or prejudice might be relevant in deciding the propriety of transfer, but only if such circumstances are established by clear and convincing evidence.").  Plaintiff argues that there is still significant Hurricane Katrina/Rita-related backlog in the Mississippi federal courts, and they quote statistics indicating that the median time to trial in the Southern District of Texas is 15.3 months and the median time to trial in the Southern District of Mississippi is 22.0 months.  This case is set for trial on July 16, 2007, and Plaintiff complains that the case will go "to the end of the line" in the Southern District of Mississippi. *See Barnett*, 202 F. Supp. 2d at 670.  Defendants point out that they filed their Motion to Transfer Venue prior to the scheduling conference and that any delay imposed by a transfer to Hattiesburg is not significant enough to weigh into the Court's analysis.

The Southern District of Texas admittedly has a speedier trial docket than the Southern District of Mississippi at this point in time, but if the courts in this District were to allow cases to remain here simply because the cases could be reached more expeditiously than in other forums,

---

[4] If Defendants are interested in transferring the case to the Brownsville Division, the Court will seriously consider such a Motion.

soon the District would be inundated with so many cases that it would no longer be able to maintain its speedy trial docket—at the expense of litigants who truly belong in this forum. Simply showing that one District has a speedier trial docket than another is not enough, standing alone, to cause this factor to weigh in Plaintiff's favor.[5] Thus, this factor does not impact the analysis.

## IV. Conclusion

None of the factors favor transferring this case to Mississippi. Thus, Defendants' Motion to Transfer Venue is **DENIED**. Each Party is to bear its own taxable costs, expenses, and attorney's fees incurred herein to date.

**IT IS SO ORDERED**.

**DONE** this 8th day of March, 2007, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge

---

[5]Plaintiff also indicates that he prefers this forum because this Court is "at home" with maritime personal injury law. While the Court is flattered, it has given no consideration to this contention. Even if the Southern District of Mississippi does not hear as many maritime personal injury cases as this Court, the Court is confident that the excellent Judges in that District would do an outstanding job.